IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAOMI TANNER,<br><br>                Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:17-cv-90 BCW<br><br><br>Magistrate Judge Brooke Wells |

Under Federal Rule of Civil Procedure 73 and based upon the parties' consent,[1] this matter is before the undersigned on Plaintiff Naomi Tanner's appeal from the denial of her claims for Disability and Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Ms. Tanner alleges disability beginning on March 31, 2009 and was 35 years old as of that date. She claims disability "due to mental and physical impairments."[2] Specifically these include posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), mood disorder, depression, a learning disability, pancreatitis, ovarian cancer, borderline IQ and "chronic provisional."[3] After reviewing the parties' briefing, the Administrative Law Judge's (ALJ) decision, the record of proceedings in this case and relevant case law, the undersigned affirms the decision of the Commissioner.

---

[1] Docket no. 16.

[2] Opening brief p. 2, docket no. 17.

[3] Tr. 91-92, 104-05, 259. It is unclear from the record what exactly Plaintiff meant by "chronic provisional."

## BACKGROUND[4]

Plaintiff Naomi Tanner applied for disability insurance benefits (DIB) and supplement security income (SSI) in July 2013. She alleged disability beginning March 31, 2009, due to posttraumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), mood disorder, depression, a learning disability, pancreatitis, ovarian cancer, and borderline IQ.[5] Following the denial of her claims a hearing was held before an ALJ on June 11, 2015.[6] During the hearing the ALJ heard testimony from Plaintiff and from a vocational expert. On August 11, 2015, the ALJ issued a decision finding Plaintiff not disabled.[7] Plaintiff's claims were then denied by the Appeals Council and this appeal followed.

Plaintiff was 35 years old when she allegedly became disabled in 2009.[8] She completed the tenth grade and did not have a GED.[9] Ms. Tanner has past relevant work as a bagger, cashier, fast food worker, stock clerk, automobile detailer, and hospital food service worker.[10]

Ms. Tanner testified she was diagnosed with PTSD during a diagnostic visit while in prison and jail around 2003.[11] She was convicted of "theft by deception" for stealing a vehicle, some checks and a credit card. Ms. Tanner was also charged with possession of methamphetamine.[12]

---

[4] The parties fully set forth the background of this case, including the medical history, in their memoranda. The court does not repeat this background in full detail. The reader desiring a more extensive history is directed to the record and briefing of the parties.

[5] Tr. 91-92, 104-05, 259.

[6] Tr. 39-88.

[7] Tr. 16-33.

[8] Tr. 91.

[9] Tr. 46.

[10] Tr. 51-55, 74-75.

[11] Tr. 47-49.

[12] Tr. 50.

Ms. Tanner further testified about her mental impairments and her attorney also emphasized these mental impairments. In closing argument Ms. Tanner's attorney stated "The physical impairments are much less severe when they're considering them compared to the mental impairments."[13]

Following Plaintiff's testimony, the ALJ questioned Connie Hill the vocational expert (VE), and provided hypotheticals with various residual functional capacities.[14] The VE discussed Ms. Tanner's past relevant work and opined that she could not perform any of those jobs save for the hospital food service worker if it did not involve contact with the public.[15] In response to the ALJ's question regarding medium exertional level jobs the VE opined that Ms. Tanner could perform the jobs of cook helper, cleaner II, industrial cleaner, housekeeping cleaner, cleaner polisher and inspector, hand packager.[16] Sedentary jobs included final assembler, touch-up screener and cutter and paster.[17]

After hearing all the evidence the ALJ issued a decision following the familiar five-step sequential evaluation process used to assess social security claims.[18] The ALJ found Ms. Tanner has severe impairments of anxiety disorder, affective disorder, learning disability, borderline intellectual functioning, substance abuse disorder and pancreatitis, but did not have an impairment of combination of impairments that meets or medically equals the requirements of a listing.[19] Specifically the ALJ considered Ms. Tanner's mental impairments including 12.04

---

[13] Tr. 85.

[14] Tr. 74-85.

[15] Tr. 75-77.

[16] Tr. 78-79.

[17] Tr.79.

[18] *See* 20 C.F.R. § 416.920; *Fisher-Ross v. Barnhart,* 431 F.3d 729 (10th Cir. 2005) (summarizing the five step process).

[19] Tr. 19.

(affective disorders), 12.05 (intellectual disability), 12.06 (anxiety-related disorders) and 12.09 (substance addiction disorders).[20]

The ALJ assessed Ms. Tanner with the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations[21] and found Ms. Tanner unable to perform any past relevant work.[22] At step five the ALJ found based on the record that Ms. Tanner could not perform jobs that exist in significant numbers in the national economy. Thus a finding of disabled would have been appropriate. However, the ALJ did not stop his analysis at this point and further analyzed Plaintiff's substance use.[23]

After considering Ms. Tanner's substance use the ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with some nonexertional limitations.[24] Plaintiff would still be unable to perform her past relevant work;[25] but if the substance abuse stopped there would be a significant number of jobs in the national economy that Ms. Tanner could perform.[26] The ALJ concluded that the substance use disorder "is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if she stopped the substance use."[27]

---

[20] Tr. 19; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00 Mental Disorders (2015). The court cites to the version of the regulations that was in effect at the time of the ALJ's decision. They listing categories were later amended.

[21] Tr. 21.

[22] Tr. 23.

[23] 20 C.F.R. § 416.935(a), § 416.935(b); *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006) (noting the "special statutes and regulations governing drug and alcohol cases" and the extra step to the five-step sequential evaluation for those types of cases).

[24] Tr. 27.

[25] Tr. 31.

[26] Tr. 31-32.

[27] Tr. 32-33.

## STANDARD OF REVIEW

The Court reviews "the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[28] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

An ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all the evidence.[29] In reviewing the ALJ's decision the Court evaluates the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[30] The court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[31] Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[32] Further, the court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[33]

## DISCUSSION

On appeal Ms. Tanner raises one issue for review "Whether the ALJ erred in his evaluation of the medical opinion evidence regarding Ms. Tanner's mental impairments?"[34]

---

[28] *Madrid v. Barnhart*, 447 F.3d 788, 790 910th Cir. 2006).

[29] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).

[30] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[31] *Lax*, 489 F.3d at 1084 (citation omitted).

[32] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[33] *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

[34] Opening brief p. 2, docket no 17.

Ms. Tanner argues the ALJ erred by not properly evaluating the medical opinion evidence concerning her mental impairments. She complains the ALJ failed to follow the required two step sequential process for determining what weight should be given to a treating source's opinion.[35] In addition Ms. Tanner asserts that even if the ALJ declined to give certain opinions controlling weight, the ALJ must still evaluate the opinions using factors found in 20 C.F.R. § 404.1527 and 416.927.[36]

    (i)       Opinions of Dr. James Ottesen

Ms. Tanner first takes issue with the ALJ's assessment of Dr. James Ottesen, Ph.D. who performed a consultative psychological exam in May 2007 at the request of vocational rehabilitation. Dr. Ottesen opined that Ms. Tanner's prognosis for "completing on-the-job training and maintaining full-time gainful employment is fair to good if she remains free from substance use, obeys the law and manages her PTSD, ADHD, and depressive symptoms."[37]

The ALJ discussed Dr. Ottesen's full-scale IQ finding of 80. However, according to Ms. Tanner, the ALJ failed to address the testing which showed learning deficits in math, spelling, and reading that would require assistance. These failures created errors in the RFC determination.

An ALJ must determine a claimant's RFC "based on all of the relevant medical and other evidence."[38] "But the ALJ, not a physician, is charged with determining a claimant's RFC

---

[35] SSR 962p (establishing a two-step sequential process for determining weight given to a treating source).

[36] These factors include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

[37] Tr. 339.

[38] 20 C.F.R. § 404.1545(a)(3).

from the medical record."[39] While the "record must demonstrate the ALJ considered all of the evidence," there is no requirement an ALJ "discuss every piece of evidence."[40]

Here, the ALJ discussed Dr. Ottesen's opinion, including Ms. Tanner's own reports of using methamphetamines, marijuana, alcohol and cocaine and participating in various rehabilitation programs. The ALJ also noted Dr. Ottesen's diagnosis of PTSD, learning disorder, borderline intellectual functioning dysthymic disorder, and drug dependences. The ALJ did not need to address every single item in Dr. Ottesen's opiniont because an ALJ is not required to do so.[41] The ALJ limited Ms. Tanner to unskilled work, which does not require work where a person would need assistance with reading, spelling and math. Further, many of the representative unskilled jobs the ALJ cited to have the lowest education requirements in the areas of language and math.[42] Thus, the court is not persuaded that the ALJ erred in evaluating Dr. Ottesen's opinion.

(ii)   Opinions of Dr. Ryan Houston

Ms. Tanner next attacks the ALJ's evaluation of Dr. Ryan Houston who examined Plaintiff at the request of the Agency in May 2013. Dr. Houston opined that Plaintiff might be able to work part-time, that Plaintiff appears to have some depression and anxiety which might require treatment and that she could handle "simple and complex instructions."[43] Ms. Tanner argues the ALJ erred in disregarding Dr. Houston's opinion that she "might be capable of part-time work." The ALJ gave Dr. Houston's opinion partial weight based upon inconsistencies

---

[39] *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

[40] *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted).

[41] *See id.*

[42] *See Lane v. Colvin*, 643 F.App'x 766, 770 (10th Cir. 2016) (unpublished) (finding no error in an ALJ's failure to incorporate all of a doctor's limitations into an RFC where the representative jobs accounted for those limitations).

[43] Tr. 478.

7

with Dr. Houston's opinion and Ms. Tanner's prior consultative examinations. Plaintiff takes specific issue with the ALJ's use of "simple instructions" rather than complex instructions when noting the inconsistencies in the record.[44] The court agrees with Defendant that this is a scrivener's error and such an error is not a basis for remand.[45] The fact remains Dr. Houston opined that Ms. Tanner could handle "simple and complex instructions" which supports the ALJ's decision. Additionally, the ALJ's failure to specifically address Dr. Houston's opinion that Ms. Tanner might be capable of part-time work does not create remandable error. The ALJ discounted Dr. Houston's opinion citing to other evidence in the record and inconsistencies in Dr. Houston's own findings. Such is enough to lead the court to believe that the ALJ "considered all of the evidence," without discussing "every piece of evidence."[46]

    (iii)    The opinions of Christine Erickson and Dr. Cantril Nielson

Ms. Tanner visited Christine Erickson, a mental health counselor ACMHC,[47] over several years at the Doctor's Volunteer Clinic. Ms. Erickson provided two opinions one in 2014 and another in 2015. Ms. Erickson opined that Ms. Tanner was probably incapable of performing consistent, regular work.[48] The ALJ discussed Mr. Erickson's opinions and ultimately gave her opinions limited weight. In assigning this weight the ALJ pointed to the vagueness of Ms. Tanner's first opinion and the inconsistences with Plaintiff's treatment including her progress.

---

[44] Dr. Houston opined that Plaintiff could handle "simple and complex instructions." Tr. 478. In discounting Dr. Houston's opinion, the ALJ wrote, "Dr. Houston's opinion that the claimant could follow and carry out simple instructions is inconsistent with the claimant's demonstrated cognitive functioning from her prior consultative examination, and her inability to perform tasks such as serial seven testing." Tr. 29.

[45] *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (agreeing with the "Commissioner that this was a mere scrivener's error and did not affect the outcome of the case."); *Davis v. Erdmann*, 607 F.2d 917, 919 (10th Cir. 1979) (noting the standard that although an appellate court cannot "supply a reasoned basis for [an] agency's action" it may still "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.").

[46] *Mays*, 739 F.3d at 576.

[47] ACMHC statds for the Academy of Clinical Mental Health Counselors.

[48] Tr. 598.

Notwithstanding these reservations the ALJ did incorporate some of Ms. Erickson's opinion into the RFC including limits on contact with coworkers, no interaction with the public and no confined workspaces.[49]

In similar fashion, the ALJ looked at the opinion of Dr. Nielson who managed Ms. Tanner's medication and found that Dr. Nielsen's opinion was not supported by "significant narrative" explanations concerning why Ms. Tanner is so limited. Thus Dr. Nielsen's opinion was given little weight.

Although the court agrees with Plaintiff's general proposition that an ALJ cannot pick and choose form the record to support a decision, the court is not persuaded that happened in this case. The ALJ considered the opinions of these medical practitioners and offered valid reasons for discounting their opinions. "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'"[50]

(iv) Other Considerations

Finally, there are special statutes and regulations governing drug and alcohol cases (DAA) such as this one. The Contract with America Advancement Act of 1996,[51] added an extra step to the five-step sequential evaluation for claimants with DAA. The Act amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a

---

[49] Tr. 27.

[50] *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (quoting *U.S. Cellular Tel., L.L.C. v. City of Broken Arrow, Oklahoma*, 340 F.3d 1122, 1133 (10th Cir. 2003)).

[51] Pub.L. No. 104–121, 110 Stat. 848, 852 (enacted March 29, 1996).

9

contributing factor material to the Commissioner's determination that the individual is disabled."[52] The court finds no error in the ALJ's application of this Act.

ORDER

For the reasons set forth above the court finds substantial evidence supports the ALJ's decision and affirms the decision of the Commissioner.

DATED this 2 January 2018.

Brooke C. Wells
United States Magistrate Judge

---

[52] 42 U.S.C. § 423(d)(2)(C); see also *McGoffin v. Barnhart*, 288 F.3d 1248, 1251 (10th Cir. 2002) (discussing the Contract with America Advancement Act of 1996).